UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-81382-CIV-MARRA

MICHELLE WAHL,

      Plaintiff,

vs.

SEACOAST BANKING CORPORATION
OF FLORIDA, d/b/a SEACOAST
NATIONAL BANK,

      Defendant.

_____/

## ORDER AND OPINION

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment [DE 36] and Plaintiff Wahl's Motion for Summary Judgment on Liability [DE 40]. The Court has carefully considered the relevant filings, oral argument of counsel, and is otherwise fully advised in the premises.

This is an action alleging claims for interference and retaliation under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA"), under Counts I - IV of Plaintiff's Amended Complaint [DE 30]. In those counts, Plaintiff Michelle Wahl ("Wahl"), alleges that Defendant Seacoast Banking Corporation of Florida, doing business as Seacoast National Bank ("Seacoast"), interfered with her rights under the statute and that Seacoast retaliated against her for the exercise of those rights. The Amended Complaint also alleges claims of discrimination and retaliation under the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000(e) *et seq*.

(Counts V and VI), and claims of discrimination and retaliation based upon pregnancy status under the Florida Civil Rights Act, Fla. Stat. § 760 (Counts VII and VIII).

**Undisputed Facts**

Michelle Wahl is a 24-year old female hired by Seacoast on November 19, 2007, as a Branch Specialist I with the primary job duties of working as a bank teller.  Wahl Depo. 7.  Wahl was terminated on March 9, 2009.  *Id*.  Seacoast is an employer covered by the FMLA, Title VII and the FCRA.  Answer to Am. Compl. ¶¶ 6, 41.  Wahl qualified as an eligible employee under the FMLA.  *Id*. ¶ 5.

At her progress report completed in April 2008, Wahl's attendance and dependability was rated as unsatisfactory, and her overall evaluation of performance was rated as below expected.  Wahl had left work, or called in sick, a total of eight times since her hire date of November 19, 2007, and these absences were considered excessive.  DE 38-2.  In May 2008, after an additional absence, Wahl received an Employee Conference Report which documented a verbal warning that her nine absences were excessive and that further absences would result in disciplinary action, which could include probation and/or termination.  DE 38- 3.  If Wahl was to have any additional unscheduled absences, she was required to bring in a doctor's note.  *Id*.

In December 2008, Plaintiff's review noted improvement in her attendance. The review noted that Wahl met or exceeded all general performance factors and objectives, achieved a total performance rating of "exceeds," received a two percent salary increase, and was told she was "an asset" to the branch.  DE 38-4.

On January 22, 2009, Wahl e-mailed Denise Anderson in Seacoast's Human Resource department informing her that she was pregnant.  Wahl inquired about the company's policy and procedures for post-delivery maternity leave.  Anderson Depo. 19.  Anderson e-mailed Wahl advising her that she would be paid for four weeks of maternity leave, could use accrued sick or vacation time, and that she should look at Seacoast's Associate Handbook.  Anderson Depo. 20.  Wahl replied to Anderson telling her that she had read the suggested pages and wanted to know what forms she would need to fill out before her leave.  Anderson Depo. 22; Wahl Depo. 53.  Wahl's e-mail did not indicate any need for leave prior to delivery.[1]  Wahl Depo. Ex. 41.  In reply, Anderson e-mailed Wahl that she "will need to fill out the paperwork that your Manager gets from your HR representative."  Anderson Depo. 23.

On February 25, 2009, Branch Manager Jeanette Horn ("Horn") and Assistant Branch Manager, Jo Lee McClain ("McClain") met with Wahl and advised her she was being disciplined for excessive absences.  Wahl had missed work on 11 occasions since her December 2008 review, including the dates of December 31, 2008,[2] January 6,

---

[1]  Wahl states this is because she had no knowledge that her absences for prenatal care or for complications with her pregnancy, including treatment for such conditions, were protected by the FMLA.  DE 55, ¶ 23 (Wahl's response to Defendant's statement of facts).

[2]  It is disputed whether Wahl notified Seacoast that her appointment on December 31, 2009 was to confirm her pregnancy.  Even resolving this dispute in favor of Seacoast, it does not alter the outcome of this case.

2009,[3] January 14, 2009,[4] January 26, 2009,[5] January 27, 2009,[6] February 4, 2009,[7]

February 17, 2009,[8] February 18, 2009,[9] February 19, 2009,[10] February 24,

---

[3] It is undisputed that time off from work on January 6, 2009, was due to a required court appearance, not her pregnancy.  Plaintiff states she attended court across the street from the branch office for approximately 28 minutes and worked 40 hours that week.

[4] It is disputed whether Plaintiff gave advance notice of her need for time off on this date to see Dr. Livingston.  Even resolving this dispute in favor of Seacoast, it does not alter the outcome of this case.  The issue of whether Plaintiff gave her employer advance notice of prenatal care appointments is irrelevant in deciding whether Seacoast interfered with Wahl's rights under the FMLA.

[5] Wahl claims that she originally planned on attending a prenatal appointment on January 28, 2009 after work, but that she moved her appointment to January 26, 2009, at 9:00 a.m. (prior to her scheduled 10:00 a.m. start time), to accommodate a co-worker who, at the last minute, needed time off.  Plaintiff's Statement of Facts, DE 43, ¶ 16.

[6] This absence was for prenatal testing.

[7] After work on February 3, 2009, Wahl was involved in a motor vehicle accident.  The next day, when Wahl began experiencing back pain, Wahl's obstetrician advised her to have an ultrasound performed immediately.

[8] On February 17, 2009, Wahl called in sick.  She was experiencing severe morning sickness with nausea and vomiting.

[9] This prenatal appointment was for the first trimester screening.  Defendant claims that the schedule had already been prepared when Plaintiff notified the branch of the appointment and the schedule had to be reworked to accommodate the appointment.  Plaintiff states that her supervisor rearranged her schedule that day so that she "was forced" to use four hours of sick leave.

[10] Wahl was feeling nauseous and sick and left work 45 minutes early to go home to rest.  Wahl was scheduled to work open to close the next day, one of the busiest days of the week, and since it was fairly slow, her supervisors agreed it was okay to leave.

2009[11] and  February 25, 2009.[12]

On February 26, 2009, Candice Friend ("Friend"), Regional Human Resource

Manager, and Horn met with Wahl and provided her with another Conference

Disciplinary Report which stated:

> Since her review on 12/1/08, Michelle has been out or left early 7 times, requiring schedules to be adjusted to ensure the office had coverage on the teller line to service clients.  The following are the dates of time off by Michelle since December 31.  We have made accommodations and/or reworked the schedule to make up her hours: 12/31, 1/6, 1/14, 1/26, 1/27, 2/4, 2/19, 2/24, 2/25.  She also was out on a full day on 2/17 and left early sick on 2/18.  Michelle is being placed on a 60 day probation period.  During this time, ANY absences or time off will require a note from the Dr. indicating she has in fact been seen by the Dr. and is medically able to return to work.  Any violation of this probation may result in immediate termination.

DE 38-5.  Wahl objected to the discipline stating that her doctors' appointments were

excused absences and that Seacoast was discriminating against her because she was

pregnant and disabled.  Wahl Depo. 141, 144; Horn Depo. 75-76, 81; McClain Depo.

47-50.

---

[11]  On February 24, 2009, Wahl presented to Dr. Livingston's office for a non-routine evaluation with complaints of a severe on-going headache of two days' duration.  Wahl. Depo. 139, 81.  Dr. Livingston referred Wahl to her primary care physician Dr. Varghese.

[12]  On February 25, 2009, Walh was seen by her primary care physician, Dr. Varghese, and was provisionally diagnosed as having a migrane type headache, in conjunction with her pregnancy.  Dr. Varghese did not prescribe any treatment, advised Wahl to keep hydrated, and instructed her to call should her problem persist. Varghese Aff., DE 19-1.

When Wahl tried to discuss the details of her medical condition and why she needed to see her physicians, Horn repeatedly told Wahl that her medical condition was irrelevant and what is at issue is her time out of the bank.  Wahl Depo. 142-43; Horn Depo. 48, 64, 71, 75, 79, 80, 85, 92, 101.  Horn indicated that she needed Wahl to provide medical documentation that she was unable to work to substantiate her claim of disability.  Horn Depo. 77.  Friend testified that, "I explained to her that due to the fact that she was missing a lot of work because of her pregnancy, that we wanted to be sure she was okay to work and that the baby was going to be okay.  And so I was giving her FMLA paperwork and leave application.  But going forward any absences would require a doctor's note, certifying that she was in fact able to return to work, and it must state if there was any restrictions, if returning to work."  Friend Depo. 36.

Following this conversation, Wahl submitted a note from Dr. Livingston, dated February 26, 2009, indicating that she was physically able to work with the restrictions of lifting no more than 30 pounds and sitting for 10 minutes every two hours.  DE 20-7 at J.  The note did not indicate that Wahl was having any complications due to her pregnancy.  *Id.  According to Seacoast, since they received Dr. Livingston's February 26, 2009 note stating that Wahl was physically able to work with restrictions they could accommodate, Wahl did not qualify for leave under the FMLA.*  Charles Olson ("Olson"), Seacoast's Senior Vice President, Human Resources Director, Depo. 4, 60-69 [DE 19-6]; Friend Depo. 93, 46.

Seacoast created its own FMLA documents that are provided to employees seeking FMLA leave: a FMLA leave acknowledgment, a medical certification and authorization, and request for leave of absence.  Seacoast's FMLA leave acknowledgment form advises employees that leave may be taken intermittently or on a reduced leave schedule, *with management approval*, reducing the associate's normal working hours.  This form was never signed by Wahl.  Seacoast Answer to Request for Admission No. 38.  Friend "thinks" intermittent leave under the FMLA was discussed with Wahl, but could not "attest affirmatively for that."[13]  Friend Depo. 97, 103, 104.  Although the FMLA acknowledgment form refers to "intermittent leave or a reduced job schedule," *Wahl never asked for it and such leave was not an option for the PGA branch where Wahl worked because that branch did not have enough staff to cover a reduced working schedule*.  Friend Depo. 40, 51, 64, 65, 100.

Wahl never completed a leave application because she did not want "block" FMLA leave because she was still capable of working.  Wahl Depo. 54, 80; Friend Depo. 36.  Wahl had previously used "block" FMLA leave at her prior job when she

---

[13]  Wahl testified that intermittent leave was never discussed.  Horn testified that "I think I did [discuss intermittent leave with Wahl], because at that point we had already approved, I believe, someone else for intermittent leave.  But specifically, I can't say, attest affirmatively for that."  Horn Depo. 97.  Assuming this testimony creates a dispute as to whether intermittent leave was discussed with Plaintiff, it is not a material dispute.  Even if intermittent leave was discussed, the undisputed evidence demonstrates that Seacoast was unaware of Wahl's right to intermittent leave and did not offer Wahl intermittent leave as required by law.  29 C.F.R. §§ 825.202(b)(1) and 825.300(b).

had knee surgery.  Wahl Depo. 60-61, 166.  Posters advising employees of their rights and responsibilities under the FMLA which are promulgated by the Department of Labor have been at all times posted in each branch location of Defendant.  Olson Depo 117-18.

The Associate Handbook is made available either in paper form or through the bank's intranet system.  It contains a section on Family and Medical Leave.  DE 20-6 at 7.  It states that FMLA "leave may be denied to employees in a position where the leave requested will cause substantial and grievous economic injury to Seacoast National Bank if family and medical leave is granted."  *Id.* at 8, ¶ 2.  Under the section entitled, Reasons/Conditions of Family and Medical Leave, the only qualifying event applicable to Plaintiff would be if she was unable "to perform the functions of [her] position because of a serious health condition."  *Id.* at 8.  The start date for this type of leave begins "the first day an employee cannot perform the requirements of their job."  *Id.*  The manual provides that intermittent FMLA leave may be taken only "in the event of a specific medical necessity . . . based on an employee's own serious and certifiable health condition."  *Id.* at 9.

Wahl was next absent from work on March 3, 2009, after having gone to Jupiter Medical Center on the evening of March 2, 2009, for the sudden onset of right lower quadrant pain.[14]  She was diagnosed with abdominal pain with unclear etiology.

_____

[14]  It is disputed whether at the time of calling in sick, Wahl informed Seacoast of the reason for her absence.  Wahl Depo. 85-86; Maria Toelle Depo. 78, 148.  This

Livingston Aff., DE 19-3, ¶ 14.  Wahl thereafter again left work early on March 6, 2009, due to nausea, vomiting and a migraine-type headache.  After leaving work she was admitted to Jupiter Medical Center.  On that date, a determination was made to terminate her employment for excessive absenteeism and violation of probation.  Jo Lee McClain Depo. 61-62.  Wahl notified Seacoast she had been admitted to the hospital on March 6, 2009.   Wahl's employment was terminated on March 9, 2009.

The leave taken by Wahl on and after December 31, 2008 through March 6, 2009, as listed on the Conference Report, was never considered by Seacoast to be protected FMLA time because Seacoast "didn't have a completed application for family medical leave and we didn't have any doctor certifications that she had a serious medical condition where she couldn't work."  Friend Depo. 95.

<u>Standard of Review</u>

Motions for summary judgment may only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact."

---

dispute is immaterial since Seacoast did not consider the reasons for Wahl's absence relevant.  *See* Olson Depo. 60-63 [DE 19-6].

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.* A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990).  Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor.  *Id.* at 255.  Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

<u>Discussion</u>

<u>Family and Medical Leave Act</u>

The FMLA was enacted by Congress in 1993, in part to address problems arising from "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods."  29 U.S.C. §2601(a)(4).  It was designed to provide a balance between "entitl[ing] employees to take reasonable leave for medical reasons" and "accomodat[ing] the legitimate interests of

employers." 29 U.S.C. § 2601(b)(1)(2); *Callison v City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

The FMLA provides in pertinent part that an eligible employee is entitled to up to 12 weeks of medical leave in a year in the event of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D). At the end of the leave, the employee has the right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position. 29 U.S.C. § 2614(a)(1)(A); 29 C.F.R. § 825.214(a).

FMLA leave may be planned or unplanned, 29 U.S.C. § 26112(e); 29 C.F.R. §§ 825.302, 825.303, and when "medically necessary," may be taken "intermittently" or on a "reduced leave schedule." 29 U.S.C. § 2612(b); *Ragsdale v Wolverine World Wide, Inc.,* 535 U.S. 81, 86 (2002). Whether planned or unplanned, an employee's right to take FMLA leave is conditioned on the provision of actual or constructive notice to the employer. *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 726 (7th Cir. 2007). Verbal notice can be sufficient, 29 C.F.R. §§ 825.302(c), 825.303(b), and no "magic words" are needed, *i.e.*, the employee need not expressly assert rights under the FMLA, or even mention the FMLA, so long as the employee conveys enough information to put the employer on notice that an event described in the FMLA may have occurred. 29 C.F.R. § 825.301(b*); Cruz v Publix Super Markets, Inc.,* 428 F.3d 1379 (11th Cir. 2005); *Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 456 (W.D.

Pa. 2008); *Woods v DaimlerChrysler Corp.*, 409 F.3d 984 (8th Cir. 2005);  *Calvin v Honda of America Mfg, Inc.*,  346 F.3d 713 (6th Cir. 2003).

Pursuant to the Code of Federal Regulations, 29 C.F.R. § 825.113, a "serious health condition" entitling an employee to FMLA leave means, in pertinent part, an illness, impairment or physical or mental condition that involves continuing treatment by a health care provider as defined in § 825.115.  Section 825.115 states that a "serious health condition involving continuing treatment by a health care provider includes . . . any period of incapacity due to pregnancy, or for prenatal care."  29 C.F.R. § 825.115(b).  Section 825.115(f) of Title 29 of the Code of Federal Regulations provides that "[a]bsences attributable to incapacity . . . [due to pregnancy, or for prenatal care] qualify for FMLA leave even though the employee . . . does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days.  For example, an employee . . . who is pregnant may be unable to report to work because of severe morning sickness."  29 C.F.R. § 825.115(f).  "The term 'incapacity' means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom."  29 C.F.R. § 825.113(b).  "*A pregnant employee may take leave intermittently for prenatal examinations or for her own condition, such as for periods of severe morning sickness.*"  29 C.F.R. § 825.202(b)(1) (emphasis supplied).  In sum, while pregnancy, in and of itself, is not a serious health condition guaranteeing an employee FMLA leave, absences attributable

to incapacity due to pregnancy, or for prenatal care qualify for FMLA leave.

Also under the Code of Federal Regulations, "*when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave* within five business days, absent extenuating circumstances."  29 C.F.R. § 825.300 (b)(1).  FMLA requires an employer to give an employee whose leave may be covered by FMLA "written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.300(c)(1).

The FMLA creates two types of claims: interference claims, in which an employee asserts that her employer denied or otherwise interfered with her substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that her employer discriminated against her because she engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees ... who have used FMLA leave.").[15]

To state a claim of interference with a substantive right, an employee need only demonstrate, by a preponderance of the evidence, that she was entitled to the

---

[15]  While the FMLA does not clearly delineate these two claims with the labels "interference" and "retaliation," those are the labels courts have used in describing an employee's claims under the Act.  *See, e.g., O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1352 (11th Cir. 2000).

benefit denied.  *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54

(11th Cir. 2000); *King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir. 1999).

It is not necessary to allege or show that the employer intentionally deprived the

employee of benefits; *i.e.* no showing of ill intent is required.  *Strickland v. Water*

*Works & Sewer Bd. of City of Birmingham,* 239 F.3d 1199, 1208 (11th Cir. 2001); *Smith*

*v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 960 (10th Cir. 2002); *Hoge v.*

*Honda of Am. Mfg., Inc.,* 384 F.3d 2388 (6th Cir. 2004).

  In contrast, to succeed on a retaliation claim, an employee must demonstrate

that her employer intentionally discriminated against her in the form of an adverse

employment action for having exercised an FMLA right, and a causal connection

between the protected conduct and the adverse employment action must be shown.

*King*, 166 F.3d at 891; *Smith v. BellSouth Telecomm., Inc.*, 273 F.3d 1303, 1314 (11th

Cir. 2001).

  The Plaintiff has alleged what she identifies as three interference claims: (a)

discouraging the use of FMLA leave for prenatal visits (Count II); (b) interfering with

her future use of FMLA leave by terminating her (Count III); and (c) using her FMLA-

covered absences as a negative factor in disciplinary action/termination (Count I).

**FMLA Interference Claims**

  Wahl argues that she is entitled to summary judgment on liability because the

undisputed facts show that Seacoast interfered with her rights under the FMLA, and

when she objected to Seacoast disciplining her for taking leave which qualified as

intermittent under the FMLA, Seacoast discriminated and retaliated against her. Seacoast argues that it is entitled to summary judgment on this claim because no jury could reasonably conclude that Wahl suffered from a serious health condition, and it could not possibly have denied Wahl benefits to which she was entitled because it was not on notice that her absences were due to potentially FMLA-qualifying reasons.

As stated above, to state an interference claim under the FMLA, Wahl need only demonstrate that she was entitled to the benefit denied. *Strickland*, 239 F.3d at 1206-07; *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349 (11th Cir. 2000). Specifically, this requires that Wahl show that she was an eligible employee, that Seacoast was an eligible employer, that she was entitled to leave, that Seacoast knew or should have known that her leave was for a FMLA qualifying reason, and that Seacoast denied her FMLA benefits to which she was entitled. *Wilson v. NHB Indus., Inc.*, 219 F.App'x. 851 (11th Cir. 2007); *Stubl v. T.A. Systems, Inc.*, 984 F.Supp. 1075, 1086 (E.D. Mich. 1997); *Rodriguez v. Bank of America, N.A.*, No. 09-cv-1814- PHX-NVW, 2010 WL 2890219, *3 (D. Ariz. July 21, 2010).

Seacoast does not dispute that under the FMLA, it is a covered employer and Wahl had worked the requisite hours and months to qualify as an eligible employee. But that is where any agreement ends.  Plaintiff argues that she is entitled to summary judgment on her claims under the FMLA because Seacoast (1) failed to provide her with written notice of her FMLA rights; (2) failed to advise her of her right to take intermittent leave; (3) misled her regarding her FMLA rights; (4) failed

to designate her leave taken as FMLA qualifying; (5) failed to advise her whether her leave qualified as FMLA leave; (6) discouraged her from taking leave; (7) placed her on a 60 day probation for taking qualified FMLA leave; (9) terminated her employment; and (10) discriminated against her when it terminated her even though she had unused sick leave.

The undisputed facts unequivocally demonstrate, and Seacoast's counsel at the hearing reluctantly agreed, that at some point before Wahl was terminated, Seacoast knew that many of Wahl's absences were for prenatal care or due to pregnancy related conditions.  Despite the fact that the Regulations include prenatal care visits and intermittent incapacity due to morning sickness as examples of FMLA qualifying leave, Seacoast insists that Wahl did not qualify under the FMLA because her pregnancy did not incapacitate her or render her unable to perform the functions of her job.  29 C.F.R. § 825.115(f).  The undisputed facts further demonstrate that Seacoast neither designated her leave for prenatal care and pregnancy related conditions as FMLA qualifying, nor notified Wahl of the designation and her rights thereunder, as required.  29 C.F.R. § 825.300 (b)(1).  The undisputed facts further show that instead of properly advising Wahl of her FMLA rights to take intermittent leave, Seacoast placed Wahl on disciplinary probation because of "excessive absences" which absences were, for the most part, protected by the FMLA.  Then Seacoast terminated Wahl's employment on March 9, 2009, for violating her probation for additional "excessive absences" on March 3rd and 6th, which absences were

necessitated by her pregnancy and protected by the FMLA.

Section 825.220(b) of Title 29 of the Code of Federal Regulations provides that "[a]ny violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." Interfering with the exercise of an employee's rights includes, for example, not only refusing to authorize leave, but discouraging an employee from using such leave. *Id*. Further, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions . . ." 29 C.F.R. § 825.220(c).

It is clear that Seacoast was unaware of its obligations and responsibilities under the Code of Federal Regulations and refuses to acknowledge them now. And even if Olson, Horn, or Friend knew that the FMLA provided protection for pregnant employees before the birth of the child, the undisputed facts show that Seacoast would not have granted Wahl intermittent leave. According to Friend, such leave was not an option at Wahl's PGA branch because the branch did not have enough staff to cover a reduced working schedule. And pursuant to Seacoast's HR policy and FMLA forms, intermittent leave could only be taken with management approval. A pregnant employee, however, is entitled to take medically necessary intermittent leave without employer approval; employer approval is only required after the birth of the child. *See* 29 C.F.R. § 825.202(b)(1), (c); 29 C.F.R. § 825.120(a)(4), (b).

Based on the undisputed facts, Wahl has clearly demonstrated that she was entitled to FMLA leave which was wrongfully denied by Seacoast.  Accordingly, Plaintiff will be granted summary judgment on Seacoast's liability for interfering with Wahl taking FMLA protected leave.

**FMLA Retaliation Claims**

To prove FMLA retaliation, Wahl must show that Seacoast intentionally discriminated against her for exercising an FMLA right.  *See* 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c)(an employer is prohibited from discriminating against employees who attempt to use FMLA leave).  Unlike an interference claim, an employee "bringing a retaliation claim faces the increased burden of showing that [her] employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Strickland*, 239 F.3d at 1207 (internal quotation marks omitted).  Wahl asserts that Seacoast retaliated against her for taking FMLA leave by terminating her nine days after she voiced her objection at being placed on probation for excessive absences.

When evaluating a claim of retaliation under the FMLA, in the absence of direct evidence of discrimination on the part of the employer, the Court applies the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for evaluating Title VII retaliatory discharge claims.  *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1275, 1283 (11th Cir. 1999) (affirming based on the holding and rationale of the district court's order,

which in turn applied the McDonnell-Douglas framework); *see also Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999).

In order to establish a prima facie case of retaliatory discharge or retaliation, a plaintiff must show that (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action.  *See Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008); *Parris v. Miami Herald Pub'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000); *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (Title VII).

As discussed above, the time Wahl took away from work for prenatal care appointments or for conditions of pregnancy, such as morning sickness, is statutorily protected.  This satisfies the first element.  Since Wahl was fired from the bank, the second element of a prima facie case of retaliation is established.  The third and final element, that there be a causal connection between the protected conduct and the adverse employment action, is also undisputedly established.  Wahl was terminated for excessive absences, some of which were statutorily protected.  Therefore, Wahl has established a prima facie case of FMLA retaliation.

The burden next shifts to Seacoast to articulate a legitimate,  nondiscrim-inatory reason for Wahl's probation and termination.  Since the undisputed record evidence demonstrates the only reason Wahl was placed on probation and then fired was for the absences taken for protected FMLA leave, summary judgment must be

entered in favor of Wahl on her claims of FMLA retaliation.

Seacoast refuses to acknowledge the applicable law, and continues to argue that Wahl did not engage in statutorily protected activity.  Seacoast asserts, "because the Plaintiff did not have a serious health condition, did not provide sufficient notice of a need for FMLA leave, and because she waived[16] the FMLA protections when offered, the Plaintiff cannot be considered to have engaged in protected activity sufficient to meet the first element of any retaliation claim."  DE 36 at 15.  This argument misses the mark.

As discussed above, Congress intended to provide special protection for pregnant employees and the regulations issued by the Department of Labor define pregnancy as a "serious health condition" if it involves "*any* period of incapacity due to pregnancy, or for prenatal care."  29 C.F.R. § 825.115(b) (emphasis supplied).  *See also*, 29 C.F.R. § 825.115(f); 29 C.F.R. § 825.202(b)(1); and 29 C.F.R. § 825.120.  Wahl has established as a matter of law that she had a serious health condition.

Also, as discussed above, under the factual circumstances of this case, it was not Wahl's responsibility "to provide sufficient notice of a need for FMLA leave," to Seacoast.  To the contrary, it was Seacoast which was obligated to notify Wahl of her

---

[16]  While the Regulations provide that "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under FMLA," 29 C.F.R. § 825.220(d), what Seacoast is really arguing is that Wahl *declined*  FMLA leave.  Wahl may have declined "block" FMLA leave before the birth of her child, but intermittent leave was never offered so she could not have declined it.  Indeed, she was fired for taking statutorily protected intermittent FMLA leave.

eligibility to take intermittent FMLA leave once Seacoast learned that Wahl's leave was for prenatal care and conditions of her pregnancy.  29 C.F.R. § 825.300(b); *Barrett v. Detroit Heading, LLC*, 311 Fed. Appx. 779, 791 (6th Cir. 2009).  While it is unclear exactly when Seacoast knew that Wahl's absences were for prenatal care appointments or conditions of her pregnancy, it is established as a matter of fact that Seacoast was on notice by at least February 26, 2009.  That was when Seacoast met with Wahl to discuss her absences, the FMLA, and when Wahl objected to being placed on probation.  Shortly after that meeting Wahl took additional statutorily protected leave, and it was for taking that leave (and thereby violating her probation) that she was terminated.

Based on the undisputed facts, Wahl has established a prima facie case of FMLA retaliation by Seacoast.  Seacoast has not met its burden of articulating a legitimate, nondiscriminatory reason for Wahl's probation and termination.  Accordingly, Plaintiff will be granted summary judgment on her claim that Seacoast retaliated against her as a result of her exercising, or attempting to exercise, her FMLA rights.

## Pregnancy Discrimination

Wahl also brings claims under the Pregnancy Discrimination Act of 1978 ("PDA"), which amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k).  In 1978, Congress amended Title VII by enacting the PDA, which provides that the statutory prohibitions of discrimination "because of sex" or "on the basis of sex"

include discrimination on the basis of pregnancy, childbirth, or related medical conditions.  42 U.S.C. § 2000e(k) (1994).  This act declared that women affected by pregnancy "shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefits programs, as other persons not so affected but similar in their ability or inability to work...."  *Id*.  It is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex," and, following enactment of the PDA, this includes discrimination on the basis of "pregnancy, childbirth, or related medical conditions."  42 U.S.C. §§ 2000e-2(a)(1), 2000e(k); *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000) (per curiam).  In other words, an employer is not permitted to take an "adverse employment action" against an employee on the basis of pregnancy, as to do so would constitute illegal discrimination.  *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1235 (11th Cir. 2001).

There are two types of discrimination actionable under Title VII, disparate treatment and disparate impact.  *See Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308 (11th Cir. 1994).  Although proof of discriminatory intent is necessary for a plaintiff to succeed on a claim of disparate treatment, a claim of disparate impact does not require evidence of intentional discrimination.  *Id*. at 1313.  Here, Wahl has not offered direct evidence that Seacoast intended to discriminate against pregnant employees.  Wahl must therefore present circumstantial evidence from which an

inference of intentional discrimination can be drawn.  Accordingly, the Court tests

the sufficiency of those claims by applying the burden-shifting framework set forth in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See e.g. McCann v. Tillman*,

526 F.3d 1370, 1373 (11th Cir. 2008).

**<u>Disparate Treatment</u>**

In order to prevail on a disparate treatment claim based on circumstantial

evidence, Wahl is required to first establish a prima facie case that creates a

rebuttable presumption of unlawful discrimination.  *See Armstrong,* 33 F.3d at 1313.

Wahl must meet four requirements in order to establish a prima facie case of

discrimination: (1) she is a member of a group protected by Title VII; (2) she was

qualified for the position or benefit sought; (3) she suffered an adverse effect on her

employment; and (4) she suffered from a differential application of work or

disciplinary rules.  *See id*. at 1314.

The record evidence demonstrates that Wahl was a pregnant employee, was

qualified to work as a Branch Specialist, and was disciplined by being placed on

probation and then fired for taking pregnancy related sick leave.  Therefore, the only

element Wahl must establish is whether she suffered from a differential application

of work rules.

Wahl asserts that Seacoast violated the PDA as a matter of law when it fired

her for "excessive absences" while she still had earned sick leave days available.

Wahl asserts that she suffered from a differential application of sick leave benefits

when Seacoast did not fire non-pregnant Seacoast employees who were absent with different temporarily disabling conditions.

Seacoast responds by demonstrating that it treats employees with absenteeism problems the same.  But other employees experiencing absenteeism problems who were not sick or going to statutorily covered doctor's appointments are not proper comparators.  A "comparator must be similarly situated in all relevant respects" and "nearly identical to the plaintiff."  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004).

"When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, [courts] evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'"  *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (alterations in original)).  In so doing, courts "require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  *Id.* (quoting *Maniccia*, 171 F.3d at 1368).  *See also Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1185 (11th Cir. 1984).

In *Byrd v. Lakeshore Hospital*, 30 F.3d 1380 (11th Cir. 1994), the Eleventh Circuit held that an employer violated the PDA when it denied a pregnant employee a benefit commonly afforded temporarily disabled workers holding similar job

positions, or discharged a pregnant employee for using those benefits.  *See id.* at

1383-84.  Wahl claims, and Seacoast does not dispute, that Wahl used and was paid

sick leave for her pregnancy related absences on February 17th, 18th, 19th and March

4th and 6th, had available accrued sick leave when terminated on March 9th, and that

Wahl was fired for these absences.  Under these undisputed facts, to avoid imposition

of summary judgment for pregnancy discrimination, Seacoast would have to prove the

"unusual scenario" "that it commonly discharges employees for taking their allotted

sick leave time."  *Byrd,* 30 F.3d at 1383.

Seacoast points to three employees who it claims were terminated for similar

patterns of excessive absences or time away from work:  Mr. C., Mr. S and Ms. P.  DE

51-1, ¶ 89.  Mr. C., a senior network engineer, had attendance and tardiness

problems, and failed to respond to or return phone calls when he was absent or late.

There were several instances when he was depended upon and failed to report to

work, communicate his intentions, or respond to phone calls.  DE 42-4.  Mr. S. was

frequently late or absent.  He used up his sick leave and when he was subsequently

absent, explained that "I just couldn't be here."  DE 42-5 at 3.  He did not bring in a

doctor's note when requested because he "decided not to go [to the doctor]."  DE 42-

5 at 1.  Ms. P., a branch specialist, was frequently tardy (31 times in one year),

absent, made regular errors on important transactions, and exhibited unacceptable

behavior.  DE 42-6.  The quantity and quality of these proposed comparators'

misconduct is not sufficiently similar to Wahl's and the circumstances of their

termination does not demonstrate that Seacoast discharges employees for taking time off by using their allotted sick leave.   Accordingly, Wahl has demonstrated the fourth and final element of a prima facie case of disparate treatment by showing a differential application of work rules and established a presumption of unlawful discrimination.  Seacoast has not presented evidence that rebuts this presumption. Therefore, summary judgment as to liability as to Counts V and VI for violations of the PDA will be granted.

**Florida Civil Rights Act**

Finally, Wahl brings claims of discrimination and retaliation based upon her pregnancy status under the Florida Civil Rights Act, ("FCRA"), Fla. Stat. 760.01-10 (Counts VII and VIII).   Seacoast argues that these claims should be dismissed for failure to state a claim wherein the FCRA bars discrimination claims based upon pregnancy.  The Florida statute, unlike Title VII, has never been amended to specifically state that pregnancy discrimination is sex discrimination.  It is the lack of such an amendment in Florida which underlies a  controversy as to whether Florida prohibits pregnancy discrimination.

*Carsillo v. City of Lake Worth*, 995 So.2d 1118, 1121 (Fla. Dist. Ct. App. 2008) discusses the controversy and concludes that the Florida legislature did intend to protect pregnancy discrimination as sex discrimination.  *Id*. at 1120-21; *see also O'Loughlin v. Pinchback*, 579 So.2d 788, 792 (Fla. Dist. Ct. App. 1991).  However, other courts in Florida have concluded that FCRA bars such discrimination.  *Compare,*

*e.g., Boone v. Total Renal Labs., Inc.*, 565 F. Supp. 2d 1323 (M.D. Fla. 2008) (concluding that the FCRA does not provide a cause of action for pregnancy discrimination); *Frazier v. T-Mobile USA, Inc.*, 495 F. Supp. 2d 1185, 1187 (M.D. Fla. 2003); and *Westrich v. Diocese of St. Petersburg, Inc.*, No. 8:06-CV-210-T-30TGW, 2006 WL 1281089, *2 (M.D. Fla. May 9, 2006) (Florida legislature's failure to include language similar to the PDA when it enacted the FCRA after the *O'Loughlin* decision is a strong indication that it did not intend to include pregnancy-based discrimination in the FCRA) with, *e.g., Carsillo v. City of Lake Worth*, 995 So.2d 1118, 1121 (Fla. Dist. Ct. App. 2008) and *Wesley-Parker v. Keiser Sch., Inc.*, No. 05-cv-1068-J-25MMH, 2006 U.S. Dist. Lexis 96870, at *3 (M.D. Fla. Aug. 21, 2006) (finding that the FCRA covers claims of pregnancy discrimination).  The issue of coverage for pregnancy discrimination under the FCRA has not been finally resolved by the Supreme Court of Florida.   Plaintiff is succeeding on all her claims under the FMLA and PDA herein. Even if the FCRA unambiguously covered pregnancy discrimination, any relief gained by moving under the FCRA would be merely duplicative and unnecessary.  Therefore, Wahl's motion for summary judgment as to liability under the FCRA will be denied. Accordingly, it is hereby

ORDERED AND ADJUDGED Defendant's Motion for Summary Judgment **[DE 36] is DENIED** and Plaintiff Wahl's Motion for Summary Judgment on Liability **[DE 40] is GRANTED in part and DENIED in part**.  A status conference regarding how this case shall proceed will be held on **Tuesday, March 22, 2011 at 1:30 P.M.** in Courtroom 4

(3rd floor) at the Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis

Street, West Palm Beach, Florida.  Counsel who wish to appear by telephone may

contact Irene Ferrante at 561-514-3765.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 9th day of March, 2011.

KENNETH A. MARRA
United States District Judge

copies to:
All counsel of record
Judge Johnson